UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **D&N GARAGE, INC,**<br>**TRISTA SMITH-SPENCER, and**<br>**JACOB FRANCISCO,**<br> Plaintiffs,<br>**v.** | **CASE NO.:**<br><br>**HON.** |
| **OGEMAW COUNTY BOARD OF**<br>**COMMISSIONERS,**<br>**OGEMAW COUNTY CENTRAL DISPATCH,**<br>**BRIAN GILBERT SENIOR.,**<br>**BRIAN GILBERT JUNIOR.,**<br>**JESSICA PENNINGTON GILBERT,**<br>**JUSTIN NOFFSINGER,**<br>**MIKE O'DELL,**<br>**DALTON WORTHY, and**<br>**ROBERT WEISHUHN,**<br> Defendants. | **PLAINTIFFS DEMAND A JURY** |

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D. CONKLIN, PLC
Attorneys for the Plaintiff
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

## COMPLAINT and JURY DEMAND

## STATEMENT OF THE CASE

This is a case of corruption and cronyism in a local law enforcement agency. Trista Smith-Spencer is the owner of a multi-generation family business, D&N Garage, Inc. Jacob Francisco works at the business with her. Ms. Smith-Spencer's ex-husband, Mike Spencer, had spent years currying favor with members of the Ogemaw County Sheriffs' Department by doing unethical and illegal things for them. After Trista Smith-Spencer divorced him, Mr. Spencer's friends in the Ogemaw County Sheriff's Department acted on his behalf to harass and intimidate Ms. Smith-Spencer and Mr. Francisco, and to interfere with the business. Ms. Smith-Spencer and Mr. Francisco have both repeatedly complained to the County Board of Commissioners and to the Sheriff. But, to date, they have consistently failed and refused to do anything to put it to an end. The Plaintiffs bring this lawsuit in an effort to end the continuing and ongoing governmental harassment and intimidation to which they have been unlawfully subjected.


## JURISDICTION AND VENUE

1.      This is a claim to remedy violations of the United States Constitution pursuant to 42 USC § 1983 and the doctrine of *Ex Parte Young*.

2.      Plaintiff D&N GARAGE, INC. is a for-profit corporation organized under the law of the State of Michigan. It is a 53-year family business that is currently owned and operated by Plaintiff Trista Smith-Spencer. The business principally operates in Ogemaw County, Michigan which is within the jurisdictional bounds of the Eastern District of Michigan.

3.      Plaintiff TRISTA SMITH-SPENCER is a permanent resident of Ogemaw County, Michigan.

4.      Plaintiff JACOB FRANCISCO is a permanent resident of Ogemaw County, Michigan.

5.     Defendant OGEMAW COUNTY, MICHIGAN is a municipality of the State of Michigan located within the jurisdictional bounds of the Eastern District of Michigan.

6.     Defendant OGEMAW COUNTY CENTRAL DISPATCH is the primary dispatch center for five law enforcement agencies, eight fire departments, and three EMS stations within Ogemaw County. Central Dispatch handles all of the radio communications for these response agencies. Central Dispatch also receives and disseminates vital information to officers on traffic stops and complaints through the State of Michigan LEIN system.

7.     Defendant BRIAN GILBERT SENIOR was, during the course of some of the events described in this Complaint, a Deputy of the Ogemaw County Sheriff. He was elected Sheriff of Ogemaw County during the 2020 general election. The Ogemaw County Sheriff is an office proscribed by the Michigan Constitution, Article VII § 4. Mr. Gilbert is sued, as delineated herein, in his capacity as an individual, and in his capacity as the Sheriff of Ogemaw County.

8.     Defendant BRIAN GILBERT JUNIOR is, and at the time of the events described in this Complaint was, a Deputy of the Ogemaw County Sheriff. He is also the son of Defendant Brian Gilbert Senior. He is sued as an individual.

9.     Defendant JESSICA PENNINGTON GILBERT is, and at the time of the events described in this Complaint was, employed by Defendant OGEMAW COUNTY CENTRAL DISPATCH. Shee is also the spouse of Defendant Brian Gilbert Junion. She is sued as an individual.

10.    Defendant JUSTIN NOFFSINGER is, and at the time of the events described in this Complaint was, a Deputy of the Ogemaw County Sheriff. He is sued as an individual.

11.    Defendant DALTON WORTHY is, and at the time of the events described in this Complaint was, a Deputy of the Ogemaw County Sheriff. He is sued as an individual.

12. Defendant MIKE O'DELL is, and at the time of the events described in this Complaint was, a Deputy of the Ogemaw County Sheriff. He is sued as an individual.

13. Defendant ROBERT WEISHUHN is, and at the time of the events described in this Complaint was, a Deputy of the Ogemaw County Sheriff. He is sued as an individual.

14. This claim stems from Defendants' actions towards Plaintiffs that occurred in the County of Ogemaw, which is within the jurisdictional bounds of the Eastern District of Michigan.

15. The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent presence within the Eastern District. The Court may exercise *general in personem* jurisdiction over the individual Defendants by reason of their systematic and continuous exercise of activities within same. In the alternative, the Court may exercise *specific jurisdiction* over this dispute because the transaction or occurrence giving rise thereto occurred within, or resulted from Defendants' activities within and directed towards, the Eastern District of Michigan.

16. The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331.

17. Venue is properly laid in this forum pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

## ALLEGATIONS

18. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

19. Plaintiff D&N Garage, Inc. ("D&N") is a 55-year family owned business that is currently owned and operated by Plaintiff Trista Smith-Spencer. D&N operates a wrecker and salvage service and impound lot in Ogemaw County, Michigan.

4

20.     Until the events herein, a significant portion of D&N's revenue came from referrals from law enforcement including vehicle impoundments, abandoned vehicles, and motorist assists.

21.     The Defendant Ogemaw County Central Dispatch maintains a list of local tow companies and, in theory, makes referrals to wrecker companies in accordance with County policy and procedure which requires that the referrals be made on a rolling, nondiscriminatory basis based upon the given wrecker services' location relative to the service location.

22.     The Defendant Ogemaw County Sheriff also has its own wrecker policy. Generally, officers are not to discriminate, show favoritism, and recommend a preferred towing company of any sorts. If the motorist chooses not to request a company in particular, the officer is then supposed to ask Ogemaw Central Dispatch (its own authority) to send a no-preference wrecker. Dispatch at that point is supposed to hit a "rotation button" which populates a wrecker that services the area.

23.     In or about 2013 Plaintiff Smith-Spencer married an individual named Mike Spencer. After their marriage, Mike Spencer began working for Plaintiff D&N. He, effectively, "married in" to the family business.

24.     Over the next five to six years, Mike Spencer took various actions to curry favor with the Ogemaw County Sheriffs' Department. Some of his actions were benign in nature; he would frequently buy steak dinners for the deputies, provide them with free vehicle parts from the salvage yard, pay for hotel rooms, provide concert tickets and things of that nature.

25.     Other things he did to cultivate the relationships were unethical and outright illegal.

26.     Plaintiff Smith-Spencer is aware that on one occasion, Mike Spencer assisted Defendant DEPUTY DALTON WORTHY in removing a Vehicle Identification Number from a Jeep that was in D&N's possession and then permitted Deputy Worthy to take possession of same. This

permitted Mr. Worthy to take the vehicle, free of charge, and without paying lawful transfer tax or resolving any liens on the vehicle. At the time, D&N owned two Jeep's, one with a TR-52 ("scrap title"), and one with a clean title. Spencer assisted WORTHY and removed the VIN pate from the clean title Jeep and put it on the scrap title Jeep, then gave WORTHY the Jeep that he put the clean VIN on.

27.     Mr. Spencer also gave Defendant GILBERT JUNIOR and Jessica Gilbert (Brian's wife) a Jeep.

28.     Towards the end of 2019, Mr. Spencer removed a PJ Dump Trailer from the premises that was an impounded trailer, not even in the business name, to allow Defendant WORTHY to use it for WORTHY'S tree business he does on the side. This trailer was used with improper plates and registration, as well as no insurance. This was removed off of WORTHY'S personal vehicle as it sat at the Sheriff's Office in 2020.

29.     Plaintiff Smith-Spencer has reason to believe that Mr. Spencer engaged in several such illicit transfers of vehicles, free of charge, to his friends in the Ogemaw County Sheriff's Office.

30.     In or about July of 2018 Mike Spencer assisted Defendant DEPUTY BRIAN GILBERT JUNIOR in falsifying a vehicle accident so that he could claim a vehicle he owned was totaled and fraudulently collect an insurance settlement on same.

31.     As of July 2018, DEFENDANT DEPUTY GILBERT JUNIOR was the owner of a 2010 GMC Yukon. He soon found the payments on the Yukon to be inconvenient. So, he decided to intentionally wreck the vehicle in order to secure an insurance settlement to pay off his balance. To this end, DEFENDANT GILBERT JUNIOR intentionally drove the Yukon off the road in an attempt to "total" the car and falsify an accident scene. However, he managed to bungle this and

he did not drive fast enough to sufficiently damage the car to "total it out." He did, however, manage to get the vehicle stuck in the ditch. This is when Mr. Spencer became involved.

32.     Mr. Spencer proceeded to use one of D&N's wreckers to remove DEFENDANT GILBERT JUNIOR'S Yukon from the ditch for him. Mr. Spencer then transported the Yukon to his shop. He then assisted GILBERT JUNIOR in affixing a deer carcass to a tree. Mr. Spencer then stuffed his mouth with gauss, placed a pillow over the steering wheel, and drove the Yukon into the deer and the tree. DEFENDANT GILBERT JUNIONR, upon information and belief, proceeded to submit a claim to his insurance that the vehicle had been totaled in an "accident."

33.     Mr. Spencer thereafter bragged to Plaintiff Smith-Spencer, in several text messages, about how "good" he made the deer strike look. He sent her pictures of the totaled Yukon. He commented about how he should have taken a picture of his mouth stuffed with gauss. From the tone of his texts, he found the whole thing to be quite funny.

34.     Due in no small part to his ongoing dishonest and disreputable behavior, the relationship between Plaintiff Smith-Spencer and Mike Spencer soured. Between February and August of 2019, she took steps to separate her residence, divorce him, and remove him from the business. Mr. Spencer's friends at the Ogemaw County Sheriff's Department thereafter began a campaign of harassment and intimidation against Plaintiff Smith-Spencer on his behalf.

35.     Shortly after she began the process of extricating herself from the toxic relationship, Plaintiff Smith-Spencer observed that, when they were on Duty, Defendant Deputies JUSTIN NOFFSINGER, BRIAN GILBERT JUNIOR, DALTON WORTHY, and MIKE O'DELL, began following her and monitoring her whereabouts. These officers drove by her work, would sit in the driveway of my work, and paced by the gym while she attended in the mornings. She felt their continuing presence to be extremely intimidating.

36.     During this time, a rumor circulated that Plaintiff Smith-Spencer was having an affair with Plaintiff Jacob Fancisco.

37.     In April of 2019, Defendant DEPUTY O'DELL confronted Plaintiff Francisco about the supposed affair. Defendant DEPUTY O'DELL went so far as to threaten Plaintiff Francisco by telling him that if Mike Spencer felt like "handling it like men" he would be glad "help out." The clear implication of this statement was that if Mr. Spencer were to physically assault Plaintiff Francisco, DEPUTY O'DELL would assist him in doing so. During this same conversation, Plaintiff Francisco asked Defendant DEPUTY O'DELL if the Ogemaw police were targeting him. Defendant O'Dell responded that Mr. Francisco should be "very careful, and watch his back."

38.     Plaintiff Smith-Spencer formally separated from Mike Spencer in September of 2019. After she did so, Mr. Spencer repeatedly threatened her that, if she followed through on the divorce, no one from law enforcement would ever use D&N again. Defendant DEPUTY JUSTIN NOFFSINGER echoed this threat; he began sending her threatening text messages, saying that she would never make it on her own income without Mike Spencer.

39.     After he was served with the complaint for divorce, Mr. Spencer threatened Plaintiff Smith-Spencer on several occasions that he "cannot wait to impound Jake Francisco's shit." Plaintiff was aware that, after Officer Branden Kirby's wife had supposedly cheated on him, he and other deputies had targeted the man she supposedly cheated with, Scottie Davison, and by repeatedly pulling him over for various reasons and eventually concocted a reason to arrest him and impound his vehicle. Aware of all of this, Plaintiff took Mike Spencer's comments that he "cannot wait to impound Jake Francisco's shit" as a threat that he had colluded with his friends

in Ogemaw County Sheriff's Office to retaliate against Plaintiff Francisco by arresting him and impounding his vehicle.

40.     During the divorce proceedings, Defendant DEPUTY JUSTIN NOFFSINGER directed harassment towards Plaintiff through improper threats of charging her with a crime. Defendant NOFFSINGER had previously improperly sold a handgun to Mike Spencer. The handgun was a Department-issued handgun, and it was supposed to have been sold to Department personnel. To get around this requirement, DEFENDANT NOFFSINGER sold the weapon to Mike Spencer but made him agree to leave the gun in his name. In the midst of the divorce, Mike Spencer had left the loaded weapon sitting on a desk at D&N's offices. Plaintiff Smith-Spencer thereafter secured the weapon. As a continued means of harassment and intimidation, DEFENDANT NOFFSINGER proceeded to send several threatening and improper text messages to Plaintiff Smith-Spencer wherein he threatened to charge her with *theft* of "his" handgun. Eventually, Plaintiff Smith-Spencer turned the handgun over to then-Sheriff Howie Hanft.

41.     On another occasion during the pending divorce, Defendant DEPUTY NOFFSINGER engaged in harassment towards Plaintiff while responding to a well-check involving her daughter, minor IS. Mike Spencer and IS had gotten into an altercation in the home and IS had locked herself in a bathroom to call her grandmother. Mr. Spencer proceeded to kick in the bathroom door, screamed in her face, and took her phone. Her grandmother, concerned, had called the Ogemaw County Sheriff to perform a well check. Defendant NOFFSINGER responded. While speaking to the frightened child, NOFFSINGER proceeded to falsely state that Plaintiff Smith-Spencer was "stealing from the business" and made several other improper personal statements about her.

42.    On September 25, 2019, after months of his dodging, the process server caught up to Mike Spencer and served him with the complaint of divorce. Mr. Spencer immediately began removing cash and assets from Plaintiff D&N. And, he began to divert wrecker calls for D&N to his personal cellular phone and collecting cash for same. This allowed him to avoid declaring the income for wrecker calls to D&N, and paying over revenue that was rightly the property of the business, even though he continued to use the corporation's wrecker and to draw a salary from the corporation.

43.    The individual Defendants, at various times and upon information and belief, knowingly assisted Spencer in his fraud upon the corporation by agreeing to make wrecker calls directly to his personal cellular phone instead of referring through Central Dispatch or the business's main telephone line.

44.    Defendant DEPUTY NOFFSINGER has threatened that he is going to 'go into business with Mike Spencer' in order to 'put D&N out of business.'

45.    On one occasion, Defendant DEPUTY NOFFSINGER was on a scene where a tow was needed. In a phone conversation with Detective Stahl, his superior, NOFFSINGER was told specifically, to call Plaintiff D&N. He *refused* to do so.

46.    Plaintiffs, through the Freedom of Information Act, have secured the records of tow truck calls for the period of time between January of 2019 and December of 2020.

47.    It is within Ogemaw County's wrecker policy that wrecker calls shall be made to services physically located in close proximity to the tow that is required.

48.    After Plaintiff Smith-Spencer filed for divorce, Ogemaw County's dispatch and officers began ignoring this policy. 37 of the 39 calls that went to Arenac County companies went there *after* SMITH-SPENCER filed for divorce. Sunrise Towing, an out-of-county tow service,

received a call in January 2019 and another in July 2019, from there they received 37 in October, November, and December, after SMITH-SPENCER had filed for divorce. In 2020, there were a total of 505 calls, 216 went to Arenac County companies, 66 of which went to Spence Towing who did not have proper towing authority in the state. As it pertains specifically to the Sheriff's Office, 391 of 411 in 2019 remained in Ogemaw, of course, the other 20 going to Sunrise after SMITH-SPENCER filed for divorce. Final number for the Sheriff's Office specifically in 2020, 136 to the two Arenac County companies, while 141 went to the four Ogemaw Companies, one of which ended up closing their towing. Over 95% stayed in the county in 2019 (Again the only difference were those months after SMITH-SPENCER filed for divorce), while in 2020 just shy of 51% stayed in the county.

49.     Plaintiffs allege that the precipitous drop in wrecker calls they experienced was attributable to the personal animus that the individual Defendants held towards them. Defendants, and each of them, knowingly, intentionally, and maliciously diverted business away from them in a coordinated effort to damage their business. In order to do so, they went so far as to violate Ogemaw County's wrecker policy by directing business to far away, out of county services which they had never used prior to Plaintiff Smith-Spencer's divorce.

50.     In December of 2019, Mike Spencer's employment with Plaintiff D&N was formally terminated. At this point, he was required to return all property of the corporation. Instead, Mr. Spencer hotwired and absconded with one of the D&N's wreckers and refused multiple requests to return same. Mr. Spencer, it was learned, was using the wrecker to assist DEFENDANT DEPUTY DALTON WORTHY with his tree business; he was observed using the wrecker hauling logs.

51.     Plaintiff's made several calls to the Defendant Ogemaw County Sheriff's Department requesting their aid in recovering the wrecker. They were told, each time, that it was a "civil matter" and that law enforcement would not assist in recovering their property.

52.     On December 14, 2019 Plaintiff Smith-Spencer was at her son's wrestling tournament. While she was at the tournament, her mother and Plaintiff Francisco went and re-claimed D&N's wrecker. They then drove the wrecker to Plaintiff Smith-Spencer's home.

53.     The divorce with Mike Spencer was ongoing at this point in time. Because of the hostility and animosity between them, the Court had ordered that the parties could only access the marital home on an alternating week-on, week-off schedule. December 14, 2019 was one of Plaintiff Smith-Spencer's weeks. Meaning, on December 14, 2019, Plaintiff Smith-Spencer was allowed to be at the home but Mike Spencer was barred by court order from doing so.

54.     Plaintiff Smith-Spencer was volunteering at a raffle ticket table during the wrestling meet. Mike Spencer and his father Dennis Spencer walked up to her and told her they were going to go and "fuck her boyfriend up." She pretended to ignore them. They left.

55.     Mike Spencer, accompanied by his father Dennis Spencer, proceeded to disregard the Court order and traveled to the marital home. They found Plaintiff Francisco there with the wrecker and proceeded to assault him in front of Plaintiff's then-12-year-old daughter, minor IS, and her friends. The Ogemaw County Sheriff's Department was then called.

56.     Approximately 3 minutes after the call was received, Defendants DEPUTIES WORTHY and WEISHUHN met privately with Mike Spencer at a different location. After talking to Mr. Spencer privately for about half an hour they then proceeded, together, to return to the marital home.

57.     When they finally arrived at the scene, now approximately 45 minutes after the call,
Defendant DEPUTY WORTHY proceeded to accuse Plaintiff Francisco of having assaulted
Mike and Dennis Spencer. When Minor IS tried to tell them that this was not true, and she had
witnessed Mike and Dennis assault Plaintiff Francisco, they became intimidating towards her
and harshly told her "DON'T LIE." Defendant WORTHY went so far as to assert that Plaintiffs
Smith-Spencer and Francisco had "manipulated" minor IS.

58.     Plaintiff Smith-Spencer arrived at the scene of the fracas. After she arrived, Defendants
DEPUTIES WORTHY and WEISHUHN told her that they had spoken to County Prosecuting
Attorney Ladonna Schultz and that she had told them that she *had* to turn the wrecker over to
them. This was utterly false.

59.     Plaintiff Smith-Spencer proceeded to call then-Sheriff Howie Hanft and apprised him of
the situation. Sheriff Hanft informed her that she did *not* have to turn the wrecker over to
Spencer, WORTHY, and WEISHUHN.

60.     D&N's offices and garage are next door to the marital home, the scene of the events
described in the preceding eight paragraphs.

61.     Plaintiff Smith-Spencer told Mr. Spencer, WORTHY, and WEISHUHN that Sheriff
Hanft had contradicted their assertion that she must turn the wrecker over to them. The three then
went into a huddle together for a few minutes. After that, Deputies WORTHY and WEISHUHN
proceeded to escort Mr. Spencer to D&N's garage and assisted him in accessing same. Mr.
Spencer then proceeded to access another one of D&N's wreckers and pulled it out of the garage,
intending to take it. The three men, for some unknown reason, proceeded to leave the wrecker
sitting unattended.

62.    Fortunately, Plaintiff Smith-Spencer noticed that the three had pulled the wrecker out and appeared to be staging it for removal. She was able to sprint across the yard, jump into the wrecker, and drive it to a secure location.

63.    Defendants WORTHY and WEISHUHN proceeded to file a revisionist and inaccurate police report of the foregoing incident that indicated, falsely, that Plaintiff Francisco was the aggressor and omitted the fact that they had made false statements in an attempt to convince Plaintiffs to turn the wrecker over to Mr. Spencer under false pretenses.

64.    Shortly thereafter, Defendant WORTHY made a public posting on Facebook that stated that Plaintiff Smith-Spencer's 'fake hair, nails and eyelashes didn't cover up the fact that she is evil and vindictive.'

65.    On December 17, 2019 Plaintiff Smith-Spencer made a written complaint to the Ogemaw County Sheriff's Department regarding Defendants WORTHY and WEISHUHN's conduct on December 14th. She never received a response. And, no disciplinary or corrective action was ever taken against Deputies WORTHY and WEISHUHN.

66.    In or about February of 2020 Mike Spencer began operating a competing wrecker business he called "Spence Towing."

67.    Spence Towing, just like D&N, provided identical services to D&N in that it performed impoundments, abandonment removals, and motorist assists at the request of the Ogemaw County Sheriff.

68.    Mike Spencer did not properly register the business with the State when he started. And, Spence Towing was not properly licensed or bonded as a wrecker business.

69.    Despite this fact, Spence Towing was included on the referral rolls for Central Dispatch and was eligible to receive tow receipts, just as Plaintiff D&N was. Further, Defendant

NOFFSINGER began advocating for Spence Towing by handing motorist referrals to them on his Ogemaw County Sheriff's Department business cards.

70.    From the minute it began operating, Ogemaw County Sheriff's Department has continuously engaged in demonstrable favoritism towards Spence Towing to Plaintiff D&N's detriment. Between February and August of 2020, of the total 126 towing referrals the Ogemaw County Sheriff recorded, Spence Towing received *50 of them*. During this same period of time, Plaintiff D&N received only *8 referrals*. No other towing business on the rolls has receive nearly as many referrals as Spence Towing during this period of time.

71.    In July of 2020, Plaintiff Smith-Spencer reported Mike Spencer and Defendant DEPUTY GILBERT JR's insurance fraud to the Michigan State Police and the Ogemaw County Sheriff. She met, initially, with Detective Stahl Jr from the Ogemaw Sheriff's Office and Undersheriff Leigh David and provided them with evidence of the fraud, including the text messages her ex-husband had sent her bragging about what he had down. She is aware that they then turned everything over to Detective Sgt Jeffrey Hunger from MSP Headquarters. The investigation remains ongoing. Plaintiff is also aware that the MSP investigation is complete, and is waiting on action by the Aranac County Prosecuting Attorney.

72.    Defendant DEPUTY GILBER JR's wife, DEFENDANT JESSICA PENNINGTON GILBERT, is, and throughout the events described in this Complaint was, employed at Defendant Ogemaw County's Central Dispatch. She, therefore, has discretion and influence over which wrecker companies on the rolls receive service calls from Central Dispatch. She, upon information and belief, has knowingly and intentionally directed business away from Plaintiff D&N.

73.     After Plaintiff Smith-Spencer reported DEPUTY GILBERT JR'S insurance fraud, the calls that D&N has received from Central Dispatch have continued to dwindle to nearly zero.

74.     In or about December of 2020, Plaintiff Francisco appeared at the regular meeting of the Ogemaw County Board of Commissioners. He made them aware of the iniquitous provisions of tow referrals that D&N was receiving and requested that the Board correct same. To date, they have failed and refused to do so and it has continued.

75.     In December of this year, there was a significant ice storm. Plaintiff Francisco learned in a conversation with Central Dispatch that they were "extremely busy" with motorist assist calls. D&N Towing, however, did not receive a *single call* from the Ogemaw County Sheriff or Central Dispatch during this period of time.

76.     On December 12, 2020 Plaintiff Francisco received a call from an insurance company with whom D&N did business regarding a motorist who had slid off the road. Her coverage would pay for a tow truck and D&N was one of the approved providers. Mr. Francisco arrived at the scene to find that Defendant DEPUTY ROBERT WEISHUHN and Mike Spencer were already there. The motorist informed Plaintiff Francisco that once he was on the scene DEFENDANT WEISHUHN had told her that she could not wait for the tow truck she had called and, instead, she must use Spence Towing. When she told DEFENDANT WEISHUHN that she would prefer to wait for her insurer-provided tow truck to arrive, he had threatened to *write her a ticket*. Mr. Francisco observed that the motorist was crying, because this meant she had to pay $180 out of pocket to Spence Towing which would have been covered by her insurance if she had been allowed to wait for him. Defendant WEISHUHN's concerns about having to wait for D&N were specious and without merit; the motorist indicated that Plaitniff D&N arrived within *5 minutes* of Spence Towing.

16

77.     Upon information and belief, this is not the only time that the Defendants have heavy-handedly forced a motorist to call Spence Towing.

78.     Between September 2019 through January 2020, andDuring the weeks in which Mike Spence stayed at the house, he, against court order, continuously removed or destroyed items, and assets, including the home itself. On one particular exchange, Plaintiff Smith-Spencer came home on the first day of her week to discover that she was completely locked out of the house. The garage door openers were unplugged, batteries were removed from locking mechanisms, windows were locked, etc. Plaintiff found a window unlocked in the garage, crawled through, and entered her house. She found what looked like a burglary. Items strewn about. Everything of value either removed or destroyed. She proceeded to contact the Ogemaw County Sheriff. Defendant then-Deputy BRIAN GILBER SENIOR responded. He conducted a visual observation of the house, and told her "we all know who did this, unfortunately, there's nothing we can or will do, we are all friends here, and he could knock down the walls of the house if he chose to do so." Here therefore refused to arrest Mike Spence for his destruction of property, theft of marital property, and violation of the court order.

79.     Plaintiff Francisco attended meetings both from zoom and physically from July 2020 – September 2020 and complained about the ongoing iniquitous assignment of towing referrals to D&N. To date, nothing has been done.

### COUNT 1 – VIOLATION of the EQUAL PROTECTION CLAUSE
***Pursuant to 42 USC § 1983***
**As Against all Defendants**

80.   Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

81.    In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.' " *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979). In contrast, in "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech,* 528 U.S. 562, 564 (2000). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis,* 404 Fed.Appx. 29, 42 (6th Cir.2010)

82.    Plaintiffs, and each of them, are residents of Ogemaw County, Michigan.

83.    Plaintiffs have suffered arbitrary and malicious treatment based upon individual animus by the Defendants. To wit:

    a.    Defendants GILBERT JR, GILBERT SR, NOFFSINGER, O'DELL, WORTHY, and WEISHUHN have each, as described in more detail herein, abused the powers of their positions as deputies of the Ogemaw County Sheriff and engaged in overt harassment towards Plaintiffs due, in large part, to their personal animus towards them.

    b.    Defendants GILBERT JR, GILBERT SR, NOFFSINGER, O'DELL, WORTHY, and WEISHUHN have each, as described in more detail herein, have engaged in discriminatory policing towards Plaintiffs in favor of Mike Spence and his business, Spence Towing, due to personal animus, favoritism, and cronyism with Mike Spence.

    c.    Defendants Deputies GILBERT JR, GILBERT SR, NOFFSINGER, O'DELL, WORTHY, and WEISHUHN together with Defendant PENNINGTON-GILBERT in

her employment with Defendant Ogemaw Central Dispatch, have each, as described in more detail herein, intentionally interfered in the business of Plaintiff D&N Towing by knowingly, intentionally, and wrongfully diverting wrecker calls away from Plaintiffs in favor of Spence Towing again due to personal animus, personal favoritism, and cronyism.

84.   In *Monell v. New York City Dept. of Social Services,* 436 US 658, 691 (1978) the Supreme Court concluded that municipal liability under 42 USC § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature."  In *Pembauer v. City of Cincinnati*, 475 US 469 (1986) the Supreme Court abrogated *Monell* by holding that when an "ultimate decision maker" in a municipal organization is involved in the deprivation, or when that "action is directed by those who establish government policy" the municipality will be liable for the actions. *Pembauer,* in fact, held that a municipal organization could be held vicariously liable because a Sheriff was personally involved in the unconstitutional acts complained of.

85.   In the instant case, Defendant GILBERT SENIOR, the current Sheriff of Ogemaw County, has personally approved and ratified the ongoing harassment, intimidation, and overt discrimination. Plaintiffs have complained to him, and his office, repeatedly and he has failed and refused to remedy same.

86.   Plaintiffs have complained to Defendant OGEMAW COUNTY CENTRAL DISPATCH regarding the ongoing discrimination in provision of referral calls. Its leadership has failed and refused to remedy same, effectively approving and ratifying the unlawful discrimination towards the Plaintiffs.

87. Plaintiffs have complained to Defendant OGEMAW COUNTY BOARD OF COMMISSIONERS regarding the ongoing discrimination in provision of referral calls. Its leadership has failed and refused to remedy same, effectively approving and ratifying the unlawful discrimination towards the Plaintiffs.

## COUNT 2 –FIRST AMENDMENT RETALIATION
### 42 USC § 1983

88. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

89. Plaintiffs engaged in the following activities protected by the First Amendment to the United States Constitution:

    **a.** Plaintiff Smith-Spencer filed a complaint for divorce against Mike Spencer.

    **b.** Plaintiffs Smith-Spencer and Francisco chose to affiliate and associate with each other.

    **c.** Plaintiff Smith-Spencer reported Defendant Brian Gilbert Junior's criminal insurance fraud.

    **d.** Plaintiffs Jacob Francisco appeared at public meetings to complain about the iniquitous and improper application of the county's wrecker policy.

90. Defendants have taken the following adverse actions against the Plaintiffs:

    a. Defendants GILBERT JR, GILBERT SR, NOFFSINGER, O'DELL, WORTHY, and WEISHUHN have each, as described in more detail herein, abused the powers of their positions as deputies of the Ogemaw County Sheriff and engaged in overt harassment towards Plaintiffs due, in large part, to their personal animus towards them.

b.  Defendants GILBERT JR, GILBERT SR, NOFFSINGER, O'DELL, WORTHY, and WEISHUHN have each, as described in more detail herein, have engaged in discriminatory policing towards Plaintiffs in favor of Mike Spence and his business, Spence Towing, due to personal animus, favoritism, and cronyism with Mike Spence.

c.  Defendants Deputies GILBERT JR, GILBERT SR, NOFFSINGER, O'DELL, WORTHY, and WEISHUHN together with Defendant PENNINGTON-GILBERT in her employment with Defendant Ogemaw Central Dispatch, have each, as described in more detail herein, intentionally interfered in the business of Plaintiff D&N Towing by knowingly, intentionally, and wrongfully diverting wrecker calls away from Plaintiffs in favor of Spence Towing again due to personal animus, personal favoritism, and cronyism.

91.  The Defendants' actions described herein were motivated, at least in part, by Plaintiff's protected activity.

92.  Defendants OGEMAW CENTRAL DISPATCH, OGEMA COUNTY BOARD OF COMMISSIONERS, and OGEMAW SHERIFF have approved and ratified the ongoing retaliatory acts described herein such that the entities are liable for the damages flowing therefrom pursuant to the doctrine of *respondeat superior.*

## COUNT 3 – PERMANENT INJUNCTION
### *Ex Parte Young*

93.  Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

94.   A federal court may enjoin a state governmental official from using, or continuing to use, the powers of their office to deprive an individual of a right guaranteed by the Constitution and laws of the United States. *Ex parte Young*, 209 U.S. 123 (1908).

95.   Plaintiffs have a right to be free from arbitrary and malicious discrimination by their government.

96.   Plaintiffs have a right to be free from retaliation for exercise of their First Amendment Rights by their government.

97.   The Defendants, and each of them, are engaged in an ongoing violation of Plaintiff's rights by

    **a.**   Engaging in overt police harassment,

    **b.**   Engaging in discriminatory application of police resources,

    **c.**   Iniquitous and discriminatory application of governmental referrals for wrecker service.

98.   Plaintiffs are entitled to a permanent injunction precluding the Defendants from continuing to engage in same.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1.   ECONOMIC DAMAGES including, but not necessarily limited to, lost front and back pay and benefits from the paid position she was denied;

2.   COMPENSATORY DAMAGES resulting from the emotional pain and distress she has suffered as a result of Defendants' unlawful conduct;

3.   EXEMPLARY DAMAGES pursuant to Michigan Common Law;

4.  Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for Defendant's unlawful conduct;

5.  ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of her rights described herein, pursuant to the various statutes identified herein;

6.  INJUNCTION from future violations of Plaintiffs' rights,

7.  Pre and post judgment interest at the appropriate statutory rate, and

8.  Such other relief as this Court may deem just and appropriate in law or in equity.


**PLAINTIFFS DEMAND A JURY**


Respectfully Submitted,

Dated:  2/ 17 / 2021                    __ /s/ Collin H. Nyeholt _____
                                        Collin H. Nyeholt,
                                        Attorney for the Plaintiff

VERIFICATION OF COMPLAINT

STATE OF MICHIGAN          )

*Ogemaw*  COUNTY       )


Jacob Fancisco, being sworn, says:

I verify, under penalty of perjury, that I have read and made this Complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

                    /s/

    Jacob Francisco

Date: 2-18-2021          Time: 1:13pm


Notary block:

JANELLE TAMBLING
Notary Public, Ogemaw Co., MI
Acting in the county of *Ogemaw*
My commission expires 01/13/25

VERIFICATION OF COMPLAINT

STATE OF MICHIGAN          )

_Ogemaw_ COUNTY          )


Trista Smith-Spencer, being sworn, says:

I verify, under penalty of perjury, that I have read and made this Complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

                    /s/

        Trista Smith-Spencer

_Trista M Smith Spencer_

Date: _2-18-2021_          Time: _1:14 pm_


Notary block:

_Janelle Tambling_

                JANELLE TAMBLING
        Notary Public, Ogemaw Co., Mi
        Acting in the county of _Ogemaw_
        My commission expires 01/13/25

25